**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARTIN M.,[1]

      Plaintiff,

      v.                                                Civ. No. 21-416 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when she denied his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues, among other things, that the ALJ erred in her evaluation of the opinion of treating physician Dr. Dan Guttmann. The Court agrees that the ALJ's reasons for rejecting the treating physician opinion are not supported by the record. As a result, the Court GRANTS Plaintiff's Motion To Reverse For Payment Of Benefits, Or In The Alternative, To Remand For Rehearing, With Supporting Memorandum, Doc. 24, and remands for further proceedings consistent with this opinion.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 5, 13, 14. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

A.      Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability

benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-

step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory

criteria as follows:

(1)      At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)      At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)      At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)      If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

The ALJ discounted the opinion of Plaintiff's treating physician on the basis that it was inconsistent with the doctor's own notes and other medical progress notes, among other reasons. Plaintiff challenges this finding, arguing that the medical records are in fact consistent with the doctor's opinion. The Court agrees and further finds the ALJ gave no other valid reasons to discount the treating doctor's opinion.

A.    Legal standard

The ALJ is required to evaluate every medical opinion she receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017, as is the case here, a unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant).

First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* But "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence . . . ." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted).

If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).[4]

The ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed this as a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins*, 350 F.3d at 1301. The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

B.    Dr. Guttmann

In October 2015, Plaintiff underwent rotator cuff surgery on his right shoulder. Dr. Dan Guttmann, MD, performed the surgery. AR 356-63. As relevant to this appeal, Dr. Guttmann issued three medical opinions pertaining to Plaintiff's post-surgery shoulder functioning. First,

---

[4] The factors in the regulation are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

on June 16, 2016, Dr. Guttmann stated: "He has had failure to heal of his right shoulder after surgery and has a very guarded prognosis. I do not think he can work comfortably or effectively given his pain and weakness." AR 409.

Second, on March 9, 2017, Dr. Guttmann filled out a medical questionnaire form. AR 535-38. He noted surgery on the right shoulder and that Plaintiff failed to heal after surgery. AR 535. The prognosis was "poor" and "guarded." *Id.* Plaintiff's symptoms included weakness, pain, and limitations on motion. *Id.* His symptoms are severe enough to "frequently" interfere with concentration. *Id.* Dr. Guttmann checked the box indicating that Plaintiff is incapable of even "low stress" jobs, remarking: "p[atien]t says, also has back issues." AR 536. Dr. Guttmann opined that Plaintiff can sit for less than two hours a day, can walk or stand for less than two hours a day, and must shift positions among sitting, standing, and walking. AR 536-37. He opined that Plaintiff can lift 20 pounds rarely, can lift 10 pounds or less occasionally, and has "significant limitations" in reaching with his arms—only 25% of an eight-hour day with the right, and 50% of an eight-hour day on the left. AR 537-38. Dr. Guttmann opined that Plaintiff would function effectively only 75% of the time or less, and he would be absent more than four days a month. AR 538.

Third, on December 20, 2017, Dr. Guttmann wrote another letter, stating:

> Considering the findings at surgery where he had a massive rotator cuff tear with very poor quality tissue and this required a revision repair as well as a superior capsule reconstruction, which involves using allograft cadaver tissue to help try and stabilize the shoulder but does not replace normal rotator cuff muscle tissue. I do not ever expect him to return to full strength. He may have improvement in his pain and function, but he may not. This is not predictable yet, although at five months he was doing better than he was doing preoperatively. I do think he does deserve to be on disability permanently. He will never have normal strength and he will most likely have issues of pain and could develop arthritic issues and need further surgery including a shoulder replacement in the future. Therefore I do support his being disabled and if he needs a very specific impairment rating although this is not a workers comp, he could be evaluated by a specialist to have

an impairment rating completed. But in my opinion he has a significant disability which will not allow him to use his right shoulder for any significant lifting activities in the future permanently.

AR 880.

The ALJ assigned these opinions "little weight." AR 562. The ALJ explained:

Little weight is accorded this opinion, as it is not consistent with Dr. Guttmann's own treatment records, which show the claimant's rotator cuff healing well, and the physical therapy notes, which show nearly full range of motion, and only reduced overhead and backward reaching (see generally 8F; 10F-15F). Furthermore, there is little reason the claimant should be unable to sit, stand, or walk for six hours, particularly in light of the imaging, which shows no more than mild foraminal or central canal narrowing in the lumbar spine, and only one level of moderate foraminal stenosis in the cervical spine (1F/4; 2F/21-22; 7F/4). In addition, much of this opinion appears to be based on the claimant's subjective statement of his limitations rather than objective medical evidence, as it supports one limitation with the phrase "the patient says" written in the margins of the assessment (16F/2).

AR 562.

The ALJ assigned an RFC for light work, which requires lifting, carrying, pushing, and pulling up to 20 pounds occasionally, and 10 pounds frequently. AR 557; 20 C.F.R. § 404.1567(b). The RFC limits Plaintiff to occasional overhead reaching, but places no limitations on forward or lateral reaching. AR 557.

On appeal, Plaintiff challenges the ALJ's analysis as it relates to Dr. Guttmann's opinion on neck and shoulder impairment. Doc. 24 at 7-15. "Had the ALJ properly considered this opinion, she would have been constrained to find Mr. Martinez limited to sedentary work because of the lifting limitation, and to adopt the vocational testimony that if Mr. Martinez were limited to occasional reaching in all planes, not just overhead, he would not be able to perform the three jobs that she identified, because they all require frequent reaching." *Id.* at 14. Plaintiff contends that each of the ALJ's reasons for rejecting Dr. Guttmann's opinion related to shoulder functioning is erroneous.

1.    <u>Inconsistency with treatment records</u>

As described above, the ALJ found that Dr. Guttmann's opinion was inconsistent with his own treatment records, which show the claimant's rotator cuff healing well, and the physical therapy notes, which show nearly full range of motion and only reduced overhead and backward reaching. As Plaintiff argues, "That statement is wrong." Doc. 24 at 12.[5]

Dr. Guttmann's treatment records state that the *surgical incision* healed well. AR 356, 406. This does not have anything to do with Dr. Guttmann's later opinion that the *internal tissue injury* did not heal well such that Plaintiff could return to work that requires lifting and reaching.

And as Plaintiff points out, Dr. Guttmann's records contain ample *support* for this opinion, which the ALJ did not discuss at all:

- On December 10, 2015, Dr. Guttmann stated that Plaintiff had "improved motion and improved strength" compared to just after the surgery, but that Plaintiff had a "very guarded prognosis" and if there was no improvement in two months, another MRI would be needed. AR 406.

- On February 4, 2016, Dr. Guttmann stated that Plaintiff was "doing well" and that his "range of motion and strength are improved," but Plaintiff "still does not have full strength." Plaintiff was "improving slowly but in my opinion appropriately." AR 407.

In other words, Dr. Guttmann thought Plaintiff improved to *some* degree after the surgery, but clarified that this improvement was limited and slow, that Plaintiff was not returned to full strength, and that the prognosis was guarded. Dr. Guttmann's notes essentially document a "wait and see" approach. That is, Dr. Guttmann's treatment records related to Plaintiff's shoulder strength and failure to heal from internal tissue damage are consistent with his opinion that Plaintiff cannot perform work requiring use of his shoulder for lifting and reaching.

---

[5] The Commissioner does not address Plaintiff's contention that the ALJ mischaracterized the record. The Commissioner argues instead that Plaintiff is asking the Court to reweigh the evidence. Doc. 27 at 11-12. As explained in detail in this section, the Court disagrees and finds the record does not support the ALJ's contentions. Thus, there is no evidence to weigh.

In analyzing Dr. Guttmann's opinion, and in the earlier narrative discussion of the medical evidence, the ALJ cited Exhibits 5F, 8F, and 10F-15F in support of the statements about Plaintiff's shoulder healing. AR 559 ("[a]lthough he had not gained full strength and mobility with this arm, physical therapy records and orthopedic notes show he was progressing well with his healing, showing improved range of motion and strength"); AR 562 ("physical therapy notes . . . show nearly full range of motion, and only reduced overhead and backward reaching"). Plaintiff argues that it was improper of the ALJ to cite to entire exhibits in support of her statements without including pinpoint citations; that is, to cite collectively to hundreds of pages of treatment records as support for her analysis. Doc. 24 at 13. The Court agrees; pinpoint citations are important for Plaintiff to challenge the decision, for the Commissioner to defend it, and for the Court to review it.[6] It is not clear to what extent this is reversible error; however, the matter is not dispositive in this case because the Court has reviewed these exhibits and finds they do not support the ALJ's decision in any event.

Although the physical therapy notes and orthopedic notes do *repeatedly* document full range of motion, they do not *consistently* document full range of motion and they also frequently document support for Dr. Guttmann's opinion—support that, again, is not discussed in the ALJ's opinion. The Court briefly summarizes the records the ALJ cited:

- Exhibit 4F, January 2015 consultative examination; and Exhibit 5F, January-May 2015 physical therapy notes: These are pre-surgery notes and not relevant to the ALJ's statement that Plaintiff's shoulder healed well after surgery and regained nearly full range of motion. AR 336-347.

- Exhibit 8F, surgery notes from Dr. Guttmann: These largely document the shoulder surgery itself. AR 355-63. The October 22, 2015 post-surgery progress note states

---

[6] The Commissioner argues the ALJ does not need pinpoint citations in the discussion of opinion evidence if the ALJ included them in the discussion of the medical evidence. Doc. 27 at 13. The Court agrees in theory, but here the ALJ cited to entire exhibits without pinpoints in the earlier narrative as well. AR 559 (citing 5F; 11F).

that Plaintiff was "doing well"; the incision was healing well; good smooth range of motion; no significant guarding. But it also documented concerns about the "tear, retraction, and poor quality tissue" and opined that "[recovery] will take a while." AR 356. Further, in context, "good smooth range of motion" must be read to mean for someone who just had a major shoulder surgery.

- Exhibit 10F:

  o October 14, 2015 physical therapy: Plaintiff had "limited" right upper extremity motor control; no abduction or external rotation tests were to be performed until approved by the surgeon. AR 399.

  o November 5, 2015 physical therapy: Plaintiff was advised to avoid active movement; his arm was in a sling. AR 401.

  o January 11, 2016 physical therapy: weakness in right shoulder but "near normal active [range of motion] in all planes." AR 403.

- Exhibit 11F, December 2015 to February 2016 progress notes from Dr. Guttmann: As discussed above, while Dr. Guttmann thought his range of motion and strength "improved," the prognosis remained "guarded" and Dr. Guttmann documented that Plaintiff had not returned to full strength. AR 406-07.

- Exhibit 12F, June 16, 2016: This is Dr. Guttmann's letter opinion in which he states that Plaintiff failed to heal after surgery. AR 409.

- Exhibit 13F, radiology imaging: No relevant remarks. AR 410-17.

- Exhibit 14F, nurse practitioner progress notes as they pertain to Plaintiff's "upper extremity" functioning:

  o October 2, 2013 to September 9, 2015: These are pre-surgery notes and not relevant to the ALJ's statement that Plaintiff's shoulder healed well after surgery and regained nearly range of motion. AR 424-80.

  o October 9, 2015: No strength or motion tests because Plaintiff's arm was in a brace. AR 422.

  o October 16, 2015: No strength or motion tests because Plaintiff's arm was still in a sling. AR 419.

- Exhibit 15F, nurse practitioner progress notes as they pertain to Plaintiff's "upper extremity" functioning:

  o December 11, 2015: "limited" range of motion. AR 529.

  o January 7, 2016: "decreased" range of motion. AR 526.

11

- February 4, 2016: "painful" range of motion. AR 523.

- March 4, 2016: "decreased" range of motion. AR 520.

- April 6, 2016: full range of motion. AR 517.

- May 4, 2016: full range of motion. AR 514.

- June 1, 2016: "decreased" range of motion. AR 511.

- June 30, 2016: full range of motion. AR 508.

- August 2, 2016: full range of motion. AR 505.

- September 1, 2016: full range of motion. AR 500.

- September 17, 2016: full range of motion. AR 497.

- November 3, 2016: "painful" range of motion. AR 492.

- December 1, 2016: full range of motion. AR 488.

- December 6, 2016: no relevant remarks. AR 486.

- December 30, 2016: full range of motion. AR 483.

- February 1, 2017: full range of motion. AR 481.

In sum, although many records documented full range of motion in Plaintiff's upper extremity, other records document weakness; lack of evidence; and painful, decreased, or limited range of motion. The ALJ did not discuss or appear to consider any of the medical evidence in these records that supports Dr. Guttmann's opinion. Nonetheless, if range of motion were the only issue, the Court might be inclined to find no error in the ALJ's decision to use these records to Dr. Guttman's opinion about Plaintiff's range of motion, as these records indicate that Plaintiff had full range of motion in seven of the eight visits from June 30, 2016 through February 1, 2017 where the nurse practitioner recorded range of motion.

The nurse practitioner progress notes documenting full range of motion, however, do not contain any observations about Plaintiff's *strength* in his upper extremities. Thus, even had the

ALJ properly characterized all of these records, they would not undermine Dr. Guttmann's opinion that Plaintiff is not restored to full strength and has significant limitations on activities requiring shoulder strength.

Looking at the record as a whole, Dr. Guttmann consistently opined that Plaintiff had strength and reaching limitations related to his right shoulder. Having diagnosed, operated on, and treated Plaintiff after surgery, Dr. Guttman is in a better position than any other medical provider to assess limitations related to Plaintiff's right shoulder. And, the record contains no opinion from any other doctor that contradicts the opinion of Dr. Guttman on Plaintiff's post-surgery shoulder functioning.

2. <u>Subjective statements</u>

Finally, Plaintiff challenges the ALJ's statement that "much of this opinion appears to be based on the claimant's subjective statement of his limitations rather than objective medical evidence." AR 562; Doc. 24 at 13. The ALJ correctly observed that the opinion "supports one limitation with the phrase 'the patient says' written in the margins of the assessment." AR 562. This is true; next to the opinion that Plaintiff is incapable of working even a low-stress job, Dr. Guttmann wrote: "p[atien]t says, also has back issues." AR 536.

Plaintiff does not challenge the ALJ's use of subjectivity to discount a doctor's opinion as a general proposition. But Plaintiff challenges this use of a statement that applied to a limited portion of the opinion as a basis to reject the *entire* opinion. The Court agrees. This may have been a proper basis to reject Dr. Guttmann's opinions on stress (which was possibly related to Plaintiff's reports of back pain). But it has nothing to do with Dr. Guttmann's reaching or lifting limitations related to Plaintiff's shoulder. Dr. Guttmann set forth the evidence for the lifting and reaching limitations, expressly relating them to Plaintiff's shoulder functioning, and none of it is based on Plaintiff's subjective symptom evidence. AR 535 (citing MRI evidence, severe atrophy,

13

weakness, and fatty changes). This was therefore not a legitimate reason to reject Dr. Guttmann's opinions based on Plaintiff's shoulder functioning.

The Commissioner argues that the Tenth Circuit has approved the practice of rejecting an *entire* medical opinion because it was *partially* based on subjective evidence. Doc. 27 at 14 (citing *Rivera v. Colvin*, 629 F. App'x 842 (10th Cir. 2015)). In *Rivera*, however, the psychologist in question does not appear to have stated that *part* of his opinion was based on subjective symptom evidence; rather, the *whole* opinion was based on a mental status examination, medical records, and subjective symptom evidence. *Rivera*, 629 F. App'x at 843, 845. In other words, it does not appear that the opinion in *Rivera* could not be separated by what was based on subjective symptom evidence and what was not. The situation is different here, where the doctor stated that part of his opinion was based on subjective symptom evidence, and part of his opinion was based on objective evidence from his own treatment of Plaintiff. It is not sensible to allow an ALJ to reject the part of the opinion based on objective evidence due to another, unrelated, part of the opinion being based on subjective evidence, and *Rivera* did not discuss such a scenario.

Therefore, the Court agrees with Plaintiff that the ALJ erred in rejecting the treating physician opinion with respect to the upper extremity limitations. The Commissioner does not make a harmless error argument, and the Court finds the error harmful because Dr. Guttmann's opinion is more restrictive than the RFC.

    C.    <u>Request for benefits</u>

Plaintiff requests an outright award of benefits. Doc. 24 at 30. Plaintiff argues that the limitations Dr. Guttmann assigned would result in an RFC for sedentary work and therefore Plaintiff would grid out after the age of 50 (which he reached in 2012). *Id.* at 6, 28.

"When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional factfinding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotation marks omitted). In *Barnhart*, the Tenth Circuit awarded benefits outright on a five-year-old application.

The present application is now eight years old, filed August 26, 2014. AR 90. An ALJ first denied the application in October 2017. AR 15. After the Appeals Council denied review in June 2018, AR 1, in May 2019 this Court reversed and remanded after briefing, AR 662. In March 2021, an ALJ denied the application again. AR 552-66. Plaintiff bypassed the Appeals Council and filed directly in this Court in May 2021. Doc. 1. Consideration of the length of time the matter has been pending, therefore, weighs in favor of ordering an outright award of benefits.

Nonetheless, consideration of whether remand for additional factfinding would serve any useful purpose weighs in favor of remand. The parties' focus with respect to Dr. Guttman has been on the period between Plaintiff's surgery (October 2015) and Plaintiff's date last insured (September 30, 2016). AR 552. Plaintiff's claim of disability, however, goes back to March 2013. AR 552. It is not clear that Dr. Guttman's opinion relates all the way back to that time. And the Commissioner may also wish to develop the record as it relates to Plaintiff's shoulder functioning post-surgery. Further factfinding could therefore be beneficial.

In addition, although Dr. Guttmann is in the best position to assess limitations related to Plaintiff's right shoulder, it does not appear that he otherwise treated Plaintiff. Therefore,

although he is well positioned to assess limitations related to Plaintiff's right shoulder, he may not be best positioned to assess whether Plaintiff has restrictions that do not relate to Plaintiff's right shoulder. For instance, additional factfinding regarding Plaintiff's ability to reach and lift with his left arm may be useful in determining Plaintiff's true residual functional capacity and whether this capacity allows Plaintiff to be gainfully employed.[7] The Court declines to reach Plaintiff's remaining allegations of error, as they may be affected by the analysis on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion To Reverse For Payment Of Benefits, Or In The Alternative, To Remand For Rehearing, With Supporting Memorandum, Doc. 24, is **DENIED** with regard to the request for payment of benefits and **GRANTED** with regard to remand.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**

---

[7] The Court expresses no opinion on whether Plaintiff is correct that if the ALJ gives controlling weight to Dr. Guttmann's opinion, Plaintiff would grid out, because that issue is not before the Court on this appeal.

16